IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TRIVAR MARQUETTE SCRIVEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 121-022 |
| | ) | (Formerly CR 119-111) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Respondent moves to dismiss the § 2255 motion. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 5), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.     BACKGROUND**

   **A.     Indictment**

On September 12, 2019, the grand jury in the Southern District of Georgia charged Petitioner with bank robbery on Count Three, use of a firearm in furtherance of a crime of violence on Count Four, and possession of firearms by a prohibited person on Count Five. United States v. Scriven, CR 119-111, doc. no. 1 (S.D. Ga. Sept. 12, 2019) (hereinafter "CR 119-111"). Petitioner faced a statutory sentence of not more than ten years of imprisonment.

CR 119-111, doc. no. 2.  The Court appointed attorney Mukti Patel to represent Petitioner.  <u>Id.</u>, doc. no. 15.

### B. Guilty Plea

On January 21, 2020, Petitioner appeared with counsel and pleaded guilty to Counts Three, Four, and Five of the indictment.  <u>Id.</u>, doc. no. 121.  The written plea agreement identified the elements of each count, including for Count Five the elements of possession of a firearm by a convicted felon as:  "(1) that Defendant knowingly possessed a firearm in or affecting commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year."  <u>Id.</u>, doc. no. 56, ("Plea Agreement"), p. 3.  In exchange for the guilty plea, the government agreed to not object to a recommendation for a two-level reduction for acceptance of responsibility and move for an additional one-level reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  <u>Id.</u> at 5.

> The Plea Agreement contained the following factual basis for Petitioner's guilty plea:
>
> On or about January 16, 2018, in Richmond County, within the Southern District of Georgia, the defendant, **TRIVAR MARQUETTE SCRIVEN**, aided and abetted by others, by force and violence and by intimidation, did knowingly take from the person and presence of employees of Fifth Third Bank, 3007 Pine Needle Road, Augusta, Georgia, United States currency, belonging to and in the care, custody, control, management, and possession of said bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, the defendant did assault and did put in jeopardy the lives of said employees by means and use of a dangerous weapon, that is, a firearm. All in violation of Title 18, United States Code, Sections 2118(a), 2113(d), and 2….
>
> On or about January 16, 2018, in Richmond County, within the Southern District, the defendant, **TRIVAR MARQUETTE SCRIVEN**, aided and abetted by others, did knowingly carry, use, and brandish a firearm, to wit: a handgun, during and in relation to a crime of violence for which he may be

2

> prosecuted in a court of the United States, to wit: Bank Robbery, in violation of Title 18, United States Code, Sections 2113(a) and 2113(d), as charged in Count 3 of the Indictment. All in violation of Title 18, United States Code, Sections 924(c) and 2….
>
> That on or about January 16, 2019[sic], in Richmond County, within the Southern District of Georgia, the defendant, **TRIVAR MARQUETTE SCRIVEN**, knowing he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed at least one of the following firearms to wit, a Smith & Wesson, Model M&P 9, 9mm handgun, and a Hi-Point, Model C9, 9mm handgun, and the firearms were in and affecting interstate and foreign commerce. All in violation of Title 18, United States Code, Section 922(g)(1).

Id. at 2-3. With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 14.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 10. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 10. By signing the Plea Agreement, Petitioner additionally attested Ms. Patel had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 12.

At the change of plea, Chief United States District Judge, J. Randal Hall found Petitioner was competent to enter a guilty plea if he so desired. Id., doc. no. 121, (Rule 11 Tr.), pp. 17. Petitioner testified under oath he had sufficient time to discuss his case with Ms. Patel and was satisfied with counsel's preparation and handling of the case. Id. at 5-6. Judge

3

Hall reviewed the charges, including the felon in possession of firearms charge, to which Petitioner was pleading guilty and the maximum prison term of ten years. Id. at 5, 10.

Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the list of rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden of proof, the right to present and cross-examine witnesses, and the right to remain silent. Id. at 6-7. Petitioner confirmed no one had forced, threatened, or pressured him into pleading guilty. Id. at 2. In addition, Judge Hall reviewed the appeal waiver and its limited exceptions, as well as the collateral attack waiver. Id. at 8-9. Further, Judge Hall confirmed that, other than the promises the government made in the Plea Agreement, no one had made him any promises in order to get him to plead guilty; Petitioner affirmed that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 8, 12.

Next, Judge Hall heard a factual basis for the guilty plea from Alejandro Pascual, Assistant United States Attorney. Mr. Pascual described the Richmond County Sheriff's Office response to a bank robbery at the Fifth Third Bank on Pine Needle Road in Augusta, Georgia which took place on January 16, 2018. Witnesses described two males, one of which was later discovered to be Petitioner, enter the bank and demand money while armed and masked. They obtained approximately $2,800 in cash and fled the scene. Police located the abandoned vehicle. Near the vehicle, police found two handguns: "a Smith & Wesson, M&P, 9-millimeter which was stolen, and a Hi-Point, Model C9, both loaded, in addition to clothing that matched the robber descriptions." Id. at 14. Officers also found Petitioner's driver's license. Id. at 14-15. Petitioner was arrested on February 1, 2018, and admitted to his

4

involvement to the bank robbery. Id. at 15.  Petitioner was a convicted felon as of January 16, 2018, having previously served a one-year sentence for possession of a firearm by a convicted felon. Id. at 16. Petitioner did not have any disagreement with the testimony of Mr. Pascual and confirmed he was guilty of, and wanted to plead to, counts three, four, and five of the indictment. Id. at 16.

### C. Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at twenty-one, Criminal History Category at IV, and Guidelines imprisonment range at fifty-seven to seventy-one months. PSI ¶¶ 22. The Combined Adjusted Offense Level of 24 was decreased by two levels for Petitioner's acceptance of responsibility. The criminal history section listed myriad offenses that include two counts of obstructing a law enforcement officer, two counts of criminal trespass, one count of possessing marihuana with intent to distribute, one count of theft by receiving stolen property, and two counts of a felon possessing a firearm. Id. ¶¶ 15-16. The Combined Adjusted Offense Level of 24 was decreased by two levels for acceptance of responsibility and one additional level for substantial assistance. Id. ¶¶ 7-8.

The Government filed one objection to the PSI; however, that objection was resolved. See PSI Add. The defendant filed no objections to the PSI. Id. Judge Hall imposed a total term of imprisonment of 106 months, with 84 months to be served on Count Four and a consecutive 22 months to be served, but concurrently with each other, on Counts Three and Five. CR 119-111, doc. no. 96. Consistent with the Plea Agreement and Post-Conviction Consultation Certification, (CR 119-111, doc. no. 56), Petitioner did not file a direct appeal.

### D. § 2255 Motion

Petitioner filed the instant § 2255 motion to vacate, set aside, or correct his sentence arguing he is entitled to have his felon in possession conviction vacated in light of the decision of the United States Supreme Court in Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019). (See generally doc. no. 1.) Petitioner does not challenge his other convictions in his motion.

## II. DISCUSSION

In Rehaif, the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status element of § 922." United States v. Rehaif, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191. "Rehaif errors fit comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction.'" Greer v. United States, --- U.S. ---, 141 S.Ct. 2090, 2099 (June 14, 2021) (quoting Arizona v. Fulminate, 499 U.S. 279, 306). The Eleventh Circuit Court of Appeals has determined the Supreme Court's Rehaif decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law. In re Palacios, 931 F.3d 1314, 1315 (11th Cir. 2019). The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal. Id.

Petitioner argues the guilty plea is invalid because the District Court did not inform him of the Rehaif mens rea element. (Doc. no. 1, p. 1.) Respondent argues the § 2255 motion should be dismissed for three reasons: (1) the claim is barred by the collateral attack waiver,

6

(doc. no. 5, pp. 4-6.); (2) the claim is procedurally defaulted, (id. at 6-7.); and (3) Petitioner was charged, convicted and sentenced in accordance with Rehaif, (id. at 8-9).

### A. Petitioner's Claim is Barred by the Valid Collateral Attack Waiver in the Plea Agreement

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  United States v. DiFalco, 837 F.3d 1207, 1219-20 (11th Cir. 2016); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*).  Moreover, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."  United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) (*per curiam*).

"To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the Plea Agreement signed and verified by Petitioner explicitly set forth he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same, on any ground other than ineffective assistance of counsel. Plea Agreement, p. 10.  The waiver exceptions do not apply because Petitioner's sentence did

7

not exceed the statutory maximum of ten years of imprisonment or the advisory Guidelines range as determined by Judge Hall at sentencing, and the government did not appeal. Id. Likewise, the Rehaif claim is not based on a claim of ineffective assistance, and therefore does not fall within the only exception to the collateral attack waiver. Id. Moreover, Judge Hall reviewed the appeal and collateral attack waiver provision in the Plea Agreement during the change of plea proceedings and confirmed Petitioner understood and had agreed to the terms. Rule 11 Tr. 8-9.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary, and the Rehaif claim falls within the scope of the waiver. Therefore, enforcement of this valid collateral attack waiver bars Petitioner's Rehaif claim. See United States v. Marc, - F. App'x -, No. 19-10656, 2020 WL 1487670, at *3-4 (11th Cir. Mar. 25, 2020) (*per curiam*) (enforcing knowing and voluntary appeal waiver to bar Rehaif claim).

### B. Petitioner's Collateral Attack Waiver Is Enforceable Because His Guilty Plea Was Knowing and Voluntary

Having determined Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in a § 2255 motion, the Court turns to the knowing and voluntary nature of the guilty plea. For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a waiver contained within that plea agreement." Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365 (N.D. Ga. 2004) (citing Bushert, 997 F.2d at 1350-51).

### 1. Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . .

. must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).  In the context of Rehaif, a defendant must "show[] that, if the District Court had correctly advised him of the *mens rea* element of the offense, there is a reasonable probability that he would not have pled guilty." Greer, 141 S.Ct. at 2097 (quotation marks omitted).

### 2. Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles

Judge Hall informed Petitioner in clear terms of the charge to which he was pleading guilty including "on that date you were a convicted felon and knew you were a convicted felon," and Petitioner testified he understood the charges. Rule 11 Tr. 4-6.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 6-7.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 7, 9.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction, to include a prison term of not more than ten years. Id. at 10.  Finally, Petitioner also testified he had enough time to discuss the case with Ms. Patel and was satisfied with her services. Id. at 5-6 ; see also Plea Agreement, p. 12 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); Id. at 14 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Further in presenting his case, nothing suggests Petitioner did not know he was a felon when he possessed firearms so as to demonstrate a reasonable probability existed Petitioner would not have pled guilty. Greer, 141 S.Ct. at 2097. Indeed, "[i]f a person is a felon, he ordinally knows he is a felon." Id. Indeed, at the time of his change of please with Judge Hall, Petitioner had two prior convictions for being a felon in possession of a firearm. Additionally, Judge Hall's colloquially affirmatively announced Petitioner's plea included admittance to knowledge of his felon status, which Petitioner testified he understood as much. Rule 11 Tr. 4-6. Thus, Petitioner fails to demonstrate a reasonable probability existed he would not have pled guilty should he have been correctly advised of the *mens rea* element, as he was both advised of and did meet the element. Greer, 141 S.Ct. at 2097. Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to the felon in possession charge.

Finally, although Respondent does not argue the point, failure to include the mens rea element of a § 922(g) felon in possession charge is a non-jurisdictional defect. See United States v. Moore, 954 F.3d 1322, 1334-35 (11th Cir. 2020); United States v. McClellan, 958 F.3d 1110, 1118 (11th Cir. 2020). Entry of a valid guilty plea waives all non-jurisdictional defects that occurred prior to entry of the plea, which includes omission of an element of offense such as the mens rea element of a felon in possession charge. See United States v. Ward, 796 F. App'x 591, 599 (11th Cir. 2019) (*per curiam*); see also United States v. Brown, 752 F.3d 1344, 1354 (11th Cir. 2014) (holding failure to include mens rea element in indictment was non-jurisdictional defect waived by guilty plea); United States v. Patti, 337

11

F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### C. Petitioner Procedurally Defaulted His Rehaif Claim by Failing to Assert it on Direct Appeal

Even if Petitioner's Rehaif claim were not barred by the valid collateral attack waiver and guilty plea, it is procedurally defaulted. A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at

that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170. As to the exception for actual innocence, the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013) (emphasis added). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623-24 (citation omitted).

Petitioner alleges the guilty plea "is invalid because the District Court did not advise Petitioner of all the necessary elements of a firearm conviction." Scriven v. United States, CV 121-022, doc. no. 1, pp. 1 (S.D. Ga Feb. 8, 2021). However, Petitioner did not raise his *mens rea* claim at his change of plea hearing, at his sentencing, or on direct appeal. Moreover, Petitioner cannot establish cause based on the recent holding in Rehaif, because as explained above, that a claim was previously unacceptable to a court does not satisfy the cause requirement. Id. at 623. Additionally, the building blocks for the claim were available. Bane,

13

948 F.3d at 1297. As the Eleventh Circuit has explained, the Supreme Court's Rehaif decision did not announce a new rule of constitutional law but instead clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2). See In re Palacios, 931 F.3d at 1315.

Petitioner points to nothing that prevented him from raising what may have seemed at the time to be a losing argument. After all, as a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." Prost v. Anderson, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.). Indeed, successfully challenging circuit precedent all the way to the Supreme Court is the reward to litigants who "took the trouble to challenge adverse circuit precedent." Id. at 590-91. As Petitioner cannot satisfy the cause *and* prejudice standard, his procedural default is not excused. See Mills, 36 F.3d at 1055.

Nor can Petitioner satisfy the rigorous fundamental miscarriage of justice exception. He presents no evidence, much less new evidence, to suggest no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt had he gone to trial and required the government to prove the mens rea element. See McQuiggin, 569 U.S. at 386. This is particularly true in light of Petitioner's criminal history. Indeed, Petitioner swore under oath to Judge Hall that he had no disagreement with the fact he had a prior felony conviction when he possessed firearms on January 16, 2018. Rule 11 Tr. 16. Petitioner also signed the Plea Agreement recounting his status as a convicted felon, (Plea Agreement, pp. 3, 14), and the PSI, to which Petitioner did not object, recounted he admitted to his status as a convicted felon, (PSI ¶¶ 6). "It is the law of this circuit that a failure to object to allegations of fact in a

PSI admits those facts for sentencing purposes." United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

Petitioner never objected or otherwise expressed any surprise or confusion over his status as a felon. "Where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a Rehaif error does not affect his substantial rights." McClellan, 958 F.3d at 1119 (citing United States v. Reed, 941 F.3d 1018, 1022 (11th Cir. 2019)); see also United States v. Ward, 796 F. App'x 591, 600-01 (11th Cir. 2019) (*per curiam*) (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm). Stated otherwise, a bare Rehaif claim, made in the face of an established criminal history showing a petitioner belongs to the group prohibited from possessing a firearm, does not support an actual innocence claim. See In re Wright, 942 F.3d 1063, 1065 (11th Cir. 2019); Reed, 941 F.3d at 1021-22.

In sum, Petitioner procedurally defaulted his Rehaif claim. See United States v. Sanders, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020) (rejecting § 2255 Rehaif claim as procedurally defaulted when not raised at trial or on direct appeal and petitioner failed to satisfy cause and prejudice or actual innocence exception).

### D. Even if the Rehaif Claim Were Not Defaulted, Petitioner Is Not Entitled to Relief on the Merits Because Petitioner Was Charged, Convicted, and Sentenced in Accordance with Rehaif.

The Supreme Court decided Rehaif in June 2019, months before the indictment was filed against Petitioner on September 13, 2019. Petitioner's indictment contained the required elements of 18 U.S.C § 922(g)(1), including the Rehaif requirement that Petitioner knew he was a convicted felon. (Doc. no. 1), p. 4. Additionally, Petitioner was informed of these

15

elements in the plea agreement and at the change-of-plea hearing. Doc. no. 56, p. 3; Rule 11 Tr. 13.

Not only did Judge Hall inform Petitioner he was pleading to the element of knowing he was a convicted felon, but also the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearm forming the basis of his § 922(g) conviction. Petitioner had previously been convicted of three felonies, two of which were convictions for being a felon in possession of a firearm. PSI ¶¶ 15-16. The PSI recounted Petitioner's two admissions, one made in a bid for a reduction in his sentence for acceptance of responsibility, that he was a convicted felon and knew what he was doing was illegal. PSI ¶¶ 6, 22. Petitioner did not object to any of the information in the PSI, nor did he object at any time when he signed the Plea Agreement designating him a convicted felon, Judge Hall reviewed the charges at the change of plea hearing, or Mr. Pascual testified about Petitioner's prior criminal history.

That Petitioner had a prior felony conviction and repeatedly admitted his status as a convicted felon, without ever challenging the designation, shows he knew his status as a felon prior to his federal offense date. See Reed, 941 F.3d at 1022 (citing eight prior felonies, stipulation to felony conviction prior to offense date, and trial testimony to show knowledge of status as felon); United States v. Caldwell, 805 F. App'x 743, 749 (11th Cir. 2020) (*per curiam*). In sum, Petitioner was charged, convicted, and sentenced in accordance with Rehaif.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 5), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of

Respondent.

SO REPORTED and RECOMMENDED this 20th day of July, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA